**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| LAURA OWNBY, et al., | } | |
| | } | |
| Plaintiffs, | } | |
| | } | |
| v. | } | Case No.:  2:18-cv-00790-RDP |
| | } | |
| UNIVERSITY OF ALABAMA HEALTH | } | |
| SERVICES FOUNDATION, P.C., et al., | } | |
| | } | |
| Defendants. | } | |

**MEMORANDUM OPINION**

This case is before the court on Plaintiffs' Motion for Remand.  (Doc. # 3).  The parties have fully briefed the motion (*see* Docs. # 3, 11, 12), and the court held oral argument on the motion on July 9, 2018.  After careful review, and for the reasons explained below, the court concludes that Plaintiffs' Motion for Remand (Doc. # 3) is due to be granted.

**I.      Background and Procedural History**

Plaintiffs Laura Ownby and Lisa Wright are Alabama residents who received care from Dr. Paul Castellanos at the University of Alabama Birmingham, Academic and Medical Center ("UAB Hospital").  (Doc. # 1-1 at p. 9, ¶ 1).  Dr. Castellanos is an otolaryngologist and airway surgeon who Plaintiffs describe as a "surgeon of 'last resort'" for individuals with "obstructive airway disease, intractable swallowing disorders, and the inability to produce a natural voice." (*Id.* at p. 10, ¶ 2).  Until May 2018, Dr. Castellanos was employed by the University of Alabama at Birmingham ("UAB") and the University of Alabama Health Services Foundation, P.C. ("UAHSF").  (*Id.* at p. 11-12, ¶¶ 3-4).  Plaintiffs allege that Defendant Dr. William Carroll, the department chair of Dr. Castellanos' department, counseled him to focus on "simpler cases" in

order to improve the department's statistical outcomes. (*Id.* at p. 12, ¶ 4). Moreover, they allege that no other physician or surgeon at UAB Hospital would treat them or other "critical airway patients." (*Id.* at p. 12, 14, ¶¶ 4-5).

In March 2018, Plaintiffs filed a five-count Complaint in Alabama state court. (Doc. # 1-1 at 8-23). First, Plaintiffs allege that Defendants have abandoned patients who need "further, continued treatment by Dr. Castellanos or a replacement surgeon of the same level of skill, willingness, and experience." (*Id.* at p. 15, ¶ 6). Plaintiffs claim that the medical care that has been provided to them by UAB Hospital "may not be abandoned without reasonable notice or the provision of a competent replacement." (*Id.*). Second, Plaintiffs allege that three of the Defendants breached an implied contract in fact to offer them medical services performed by Dr. Castellanos. (*Id.* at p. 17-18, ¶ 8). They specifically contend that these Defendants breached the implied contract by interrupting the physician-patient relationships between Dr. Castellanos and themselves. (*Id.*). Third, Plaintiffs allege that Dr. Carroll tortiously interfered with contractual relationships between Plaintiffs, Dr. Castellanos, and Castellanos' employers. (*Id.* at p. 18-19, ¶ 9). They contend that Dr. Carroll sought to force Dr. Castellanos and his high-risk patients away from UAB Hospital. (*Id.*). Fourth, Plaintiffs allege that Dr. Carroll negligently and wantonly performed his duties as a supervising physician by attempting to force Dr. Castellanos' removal from UAB Hospital's staff. (*Id.* at 19-20, ¶ 10). Finally, Plaintiffs request injunctive relief, including (1) the reversal of UAB's decision to remove Dr. Castellanos from UAB Hospital's staff until, at a minimum, a replacement physician with similar skills and willingness to treat high-risk airway patients can be found, and (2) the reversal of actions taken to interfere with or curtail necessary medical treatment that has been provided to Plaintiffs at UAB Hospital. (*Id.* at p. 20-22, ¶ 11).

After Plaintiffs filed the Complaint, the parties submitted a stream of motions, most of which do not require discussion. On May 16, 2018, Plaintiffs filed a motion for declaratory and/or injunctive relief after the state court had set a preliminary injunction hearing for May 24, 2018. (Doc. # 1-8 at 203-04). On May 17, 2018, Plaintiffs also filed an Amended Complaint that named Dr. Robert Brunner, the chair of UAB Hospital's Credentialing Committee, as a Defendant. (*Id.* at 228-29).

On May 23, 2018 (the day before the scheduled preliminary injunction hearing), Defendant Brunner removed this case from state court to this court pursuant to 28 U.S.C. §§ 1331, 1367, and 1441. (Doc. # 1). Brunner explained that the state-law claims in the Complaint implicate substantial federal interests because physician credentialing is governed by the Health Care Quality Improvement Act of 1986 ("HCQIA") and the Conditions of Participation issued by the Centers for Medicare and Medicaid Services ("CMS"). (*Id.* at 6-7). Brunner stated that the Complaint implicated the Emergency Medical Treatment and Active Labor Act ("EMTALA") because Plaintiffs sought to require the hospital to offer specialized capabilities after it terminated Dr. Castellanos. (*Id.* at 7). Additionally, Brunner contended that Plaintiffs artfully pled their claims to avoid federal questions regarding privileging and staff appointments. (*Id.* at 7-8). Finally, Brunner asserted that complete preemption justified this court's jurisdiction because federal law completely preempts any state laws regarding physician credentialing, staff governance, medical staff bylaws, quality assurance, or emergency medical services. (*Id.* at 8).

Plaintiffs promptly moved to remand the case back to state court. (Doc. # 3). They emphasize in their remand motion that Defendants cannot justify a removal based upon a question of federal law raised as an anticipated defense. (*Id.* at 2). And, they insist that their claims do not require UAB Hospital or UAHSF to re-credential Dr. Castellanos. (*Id.* at 3).

## II.  Analysis

It is axiomatic that this court has limited jurisdiction and is "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 408 (11th Cir. 1999) (internal quotation omitted).  The removing party bears the burden of proving the court's jurisdiction, and any doubts about the propriety of federal jurisdiction should be resolved in favor of remand. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008).

### A.  Complete Preemption Does Not Justify This Court's Subject-Matter Jurisdiction Over Plaintiffs' Claims

In their opposition brief to the Motion to Remand, Defendants UAHSF, UAB Health System Board of Directors, Dr. Carroll, and Dr. Brunner argue that Plaintiffs' claims are completely preempted by the Conditions of Participation issued by CMS.  (Doc. # 11 at 17).  The court is not convinced.

"Complete preemption is a narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009).  To date, complete preemption has been held by the Supreme Court to exist only with respect to claims seeking benefits under a plan governed by ERISA, labor contracts governed by the Labor Management Relations Act of 1947, and usury claims against federally-chartered banks under the National Bank Act.  *Id.* at 1343-44 & n. 3.  Complete preemption arises only where "the federal statutes at issue provide[ ] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)

(referencing 29 U.S.C. §§ 185 & 1132). To decide whether a federal cause of action completely preempts related state-law causes of action, the court assesses Congress's intent in creating the cause of action by examining "such questions as whether the state claim is displaced by federal law under an ordinary preemption analysis, whether the federal statute provides a cause of action, what kind of jurisdictional language exists in the federal statute, and what kind of language is present in the legislative history to evince Congress's intentions." *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 857 (11th Cir. 1999).

Here, Defendants have failed to show that the CMS regulations cited in the notice of removal and their opposition to remand brief create any cause of action, much less an exclusive federal-law cause of action. (*See* Docs. # 1 at 8, 11 at 17). Defendants do not specify which federal regulation creates a cause of action related to the causes of action in the Complaint. (*See* Doc. # 11 at 17). Moreover, the statutes cited by Defendants -- 42 U.S.C. § 1395 and 42 U.S.C. § 1395c -- reflect no Congressional intent to establish an exclusive federal-law cause of action. Defendants point to no legislative history that would support applying complete preemption to the claims in Plaintiffs' Complaint. Finally, in other contexts, district courts in this circuit have concluded that provisions in the Medicare Act and the Medicaid Act do not completely preempt state law regulating various healthcare fields. *See, e.g.*, *Main & Assocs., Inc. v. Blue Cross & Blue Shield of Ala.*, 776 F. Supp. 2d 1270, 1281-82 (M.D. Ala. 2011) (concluding that 42 U.S.C. §§ 405(g), 1395w-22(g)(5), and 1395w-26(b)(3) did not completely preempt the plaintiff's claims that the defendant insurer wrongfully and tortiously failed to reimburse it in accordance with Medicare regulations); *Kennedy v. Health Options, Inc.*, 329 F. Supp. 2d 1314, 1316-17 (S.D. Fla. 2004) (concluding that the Medicare Act did not completely preempt breach-of-contract and breach-of-fiduciary-duty claims seeking damages arising from the plaintiff's

premature discharge from a hospital). For these reasons, the court cannot exercise subject-matter jurisdiction over these claims under the complete preemption doctrine.[1]

**B.      None of Plaintiffs' Claims Require Resolution of a Substantial Federal Question**

In their opposition brief to the Motion to Remand, Defendants argue that Plaintiffs' claims raise substantial federal issues because the claims implicate Defendants' duties under the HCQIA, CMS's Conditions of Participation, and the EMTALA. (Doc. # 11 at 10). They contend that the HCQIA provides several credentialing standards and guidelines that must be applied in resolving Plaintiffs' claims. (*Id.* at 10-11). Similarly, CMS's regulations require UAB Hospital to create certain procedures for credentialing. (*Id.* at 11). Finally, according to Defendants, the EMTALA is implicated in this action because Plaintiffs claim that they are entitled to specialized care from UAB Hospital. (*Id.* at 11-12).

A claim may arise under federal law, for purposes of 28 U.S.C. § 1331, if it necessarily presents a substantial federal issue. This "special and small category" of claims consists of those for which "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). The court examines whether a particular federal-law issue is substantial by reference to "the importance of the issue to the federal system as a whole." *Id.* at 260.

The Supreme Court has considered substantial-federal-question jurisdiction in three recent cases. First, in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), the Supreme Court considered whether a federal court has

---

[1] This conclusion reflects no judgment on whether any of Plaintiffs' claims -- or any of the equitable relief Plaintiffs seek -- is barred by the preemptive effect of the HCQIA, CMS's Conditions of Participation, or the EMTALA. *Cf. Smith v. GTE Corp.*, 236 F.3d 1292, 1313 (11th Cir. 2001) (explaining that the court's complete-preemption holding did not foreclose the parties from raising preemption arguments later).

federal-question jurisdiction over a quiet title action for land "obtained at a federal tax sale." *Id.* at 310. The Court held that the quiet title action presented a necessary and disputed federal-law question because the petitioner's only basis for contesting the tax sale was the IRS's failure to give it adequate notice of the tax sale. *Id.* at 315. It determined that the case presented a substantial federal issue appropriate for federal-court review because of (1) the government's interest in collecting taxes and obtaining funds from seized property, (2) the government's interest in a federal forum to address the validity of its administrative actions, and (3) the buyers' interest in access to a forum acquainted with federal tax law to decide the validity of actions conducted by the IRS. *Id.* Finally, the Court concluded that such exercises of federal-question jurisdiction would not upset the balance of powers between the federal government and state governments because "it will be the rare state title case that raises a contested matter of federal law." *Id.* at 315, 319-20.

Second, in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), the Supreme Court analyzed whether federal-question jurisdiction exists for a state-law reimbursement claim brought by an insurance carrier insuring a federal employee pursuant to the Federal Employees Health Benefits Act. *Id.* at 682. It rejected the insurer's argument that federal-question jurisdiction existed because federal law constituted a necessary element of the claim for relief. *Id.* at 699-701. The Court distinguished the reimbursement claim in *Empire Healthchoice* from the quiet title claim in *Grable* because the dispute in *Grable* centered on the IRS's actions, whereas the dispute in *Empire Healthchoice* arose from a private settlement and the distribution of proceeds from that settlement. *Id.* at 700. Moreover, the Court explained that *Grable* presented a nearly pure issue of law, whereas the reimbursement claim in *Empire Healthchoice* was "fact-bound and situation-specific." *Id.* at 700-01. Ultimately, the court held

that the insurer's reimbursement claim could not "be squeezed into the slim category *Grable* exemplifies." *Id.* at 701.

Third, in *Gunn*, the Supreme Court considered whether a statute granting federal courts exclusive subject-matter jurisdiction over "cases arising under any Act of Congress relating to patents" applies to legal malpractice claims concerning the mishandling of patent suits. 568 U.S. at 253. The Court acknowledged that such legal malpractice claims "may necessarily raise disputed questions of patent law" and that the malpractice claim before it presented a necessary and actually-disputed question of federal law. *Id.* at 258-59. But, it held that the malpractice claim failed to raise a "substantial" federal-law issue because the court had to consider "the importance of the issue to the federal system as a whole." *Id.* at 260-64. It determined that patent-related legal malpractice claims do not significantly affect the federal system because (1) such actions will not affect the results of prior patent litigation, (2) federal courts are not bound by state-court decisions in such actions, and (3) issues that arise for the first time in patent-related malpractice suits will be decided by federal courts at some point. *Id.* at 261-62. In responding to the argument that state-court malpractice litigation might result in issue preclusion of patent law, the Supreme Court stated that results "limited to the parties and patents that had been before the state court" are not sufficient to justify substantial-federal-question jurisdiction.

The court's analysis of the parties' jurisdiction arguments advanced here is necessarily influenced by the Eleventh Circuit's *Adventure Outdoors* opinion. There, the Eleventh Circuit applied the Supreme Court's substantial-federal-question precedents to Georgia negligence and defamation claims arising from a simulated straw purchase of a firearm. 552 F.3d at 1293-94. According to the removing defendants, the state-law claims implicated the legality of the simulated straw purchase under federal law. *Id.* at 1298. With regard to the negligence claims,

the Eleventh Circuit concluded that any legal duty owed by the defendants and any breach of such a duty could be determined without applying federal law. *Id.* at 1297. Moreover, any harm to the plaintiffs' business could be ascertained without applying federal law regarding straw purchases, as the alleged harm arose from the defendants' alleged failure to conduct a more careful investigation. *Id.* With regard to the defamation claims, which centered on assertions that the plaintiffs had violated federal law, the Eleventh Circuit concluded that the claims necessarily raised an issue of federal law about which the parties disagreed. *Id.* at 1298-99. But, it held that the defamation claims failed to present a substantial question of federal law. *Id.* at 1299-1300. The court distinguished nearly pure questions of federal law, for which federal-court jurisdiction is more appropriate, from fact-bound applications of both state law and federal law. *Id.* at 1299. It observed that the meaning of the relevant federal law was clear. *Id.* at 1300. It doubted that a state court's application of federal criminal law would disturb the uniformity and consistency of such law because federal courts are not bound by state-court interpretations of federal criminal law. *Id.* at 1300-01. As such, remanding the case back to a state court was unlikely to harm the federal government's interests. *Id.* at 1301.

In essence, Defendants' argument here is that the equitable relief sought in Plaintiffs' Complaint necessarily implicates Defendants' compliance with the HCQIA, the EMTALA, and the CMS regulations. The court has found no precedent addressing such an argument in the context of a patient's claim against a hospital. But, some district courts have addressed whether application of the HCQIA presents a substantial federal issue justifying a federal court's jurisdiction over a *doctor's* claims against a hospital. For example, in *Gaskill v. VHS San Antonio Partners LLC*, 970 F. Supp. 2d 609 (W.D. Tex. 2013), a surgeon sued a hospital and other defendants after the hospital suspended his operating privileges. *Id.* at 610. The surgeon

filed suit under the HCQIA and raised state-law theories of relief similar to those at issue here. *Id.* The *Gaskill* court rejected the argument that the need to overcome the HCQIA's immunity provisions raised a substantial federal issue because the issue before the court was "an exercise in applying facts to federal standards of behavior," rather than "a one-time question of statutory interpretation." *Id.* at 612. The court also recognized that the surgeon had failed to identify a substantial issue of federal law, while acknowledging that the federal issues in the case "may be 'substantial' to the parties." *Id.* Finally, the court stated that the surgeon's substantial-federal-question theory would have allowed "almost every aggrieved physician" to file his or her claims against a medical entity with HCQIA immunity in federal court, which would conflict with Congress's decision to not include a private right of action in the HCQIA. *Id.* at 612-13.

In *Stratienko v. Chattanooga-Hamilton County Hospital Authority*, 2008 WL 11342543 (E.D. Tenn. June 13, 2008), a physician contested a hospital's decision to condition the renewal of his accreditation on the result of a pending federal lawsuit between the doctor and the hospital authority. *Id.* at *1. The physician filed his action in state court, and the hospital removed it to federal court. *Id.* The court denied the physician's motion to remand the case for three reasons. *Id.* at *2-3. First, the court concluded that a waiver claim in the complaint raised a substantial federal issue because the court would "need to consider the nature of the professional review action which produced the grounds for such a condition," and the HCQIA governed the professional review action. *Id.* at *2. Second, the court found that judicial review of the physician's second complaint would require interpreting orders and proceedings in an earlier-filed federal-court action. *Id.* Finally, the court determined that the later-filed complaint was an artfully pled attempt to carve out an issue from the first-filed action and "circumvent[ ] the federal laws and interests which govern and pervade professional review actions." *Id.*

Here, after careful review and lengthy deliberation, and with the benefit of oral argument, the court concludes that none of the claims in Plaintiffs' Complaint fall within the "special and small category" of claims subject to the substantial-federal-question doctrine. The court understands that the relief sought by Plaintiffs raises several federal-law compliance issues that would have to be resolved by Defendants, such as determining a process for credentialing Dr. Castellanos or another physician if a court were to order such equitable relief. But, the court has not found a federal-law issue that is central to Plaintiffs' state-law claims for relief or necessary to resolve the legal issues raised by those claims. *Cf. Empire Healthchoice*, 547 U.S. at 700 (noting that the quiet title claim in *Grable* involved a federal-law question that was dispositive of the case and controlling in other cases); *Adventure Outdoors*, 552 F.3d at 1297 (explaining that the conceivable legal duties owed by the defendants in a negligence case existed "independently of federal law" and could be resolved without applying federal law). Rather, the federal-law issues, at most, may preclude certain forms of relief for Plaintiffs' claims if those claims ultimately are viable under Alabama state law.[2] The state court from which this case was removed "is competent to apply federal law, to the extent it is relevant," and it can resolve ordinary preclusion issues as they arise. *Empire Healthchoice*, 547 U.S. at 701. Ultimately, the federal-law objections raised by Defendants fail to show that *Plaintiffs' claims* necessarily raise a federal issue.

Nor have Defendants shown that this case implicates substantial federal-law issues. Defendants have explained thoroughly why the federal issues implicated by this action are

---

[2] At oral argument, Defendants claimed that the breach-of-contract claim could include an element that necessarily requires the resolution of federal-law issues. To be sure, it appears that any contractual relationships between Plaintiffs and UAB Hospital required UAB Hospital and its personnel to perform duties in compliance with several federal laws and regulations governing health care. However, the court is not convinced that the specific contractual provision allegedly breached -- an agreement to provide Dr. Castellanos' services -- necessarily raises a question of federal law. (*See* Doc. # 1-1 at p. 17, ¶ 8).

substantial to them (*see* Doc. # 11 at 12-14), but they fail to explain how they are important to the federal system as a whole. *Gunn*, 568 U.S. at 260. Unlike *Grable*, Plaintiffs' claims do not challenge a federal agency's actions or implicate a federal interest similar to the interest in collecting tax revenue. *Cf. Gunn*, 568 U.S. at 260-61 (describing the strong federal interests that justified extending federal-question jurisdiction to the quiet title action in *Grable*). Moreover, Defendants' federal-law arguments appear to present fact-bound questions of whether the equitable relief sought by Plaintiffs can comport with federal law. Such fact-bound questions typically are not appropriate grounds for substantial-federal-question jurisdiction. *Empire Healthchoice*, 547 U.S. at 700-01 (contrasting the reimbursement claim there with the quiet title claim in *Grable* because the reimbursement claim was fact-bound); *Adventure Outdoors*, 552 F.3d at 1299; *Gaskill*, 970 F. Supp. 2d at 612. Finally, the resolution of the federal-law issues raised here would not dispose of Plaintiffs' claims because Plaintiffs would be free to seek monetary damages if their claims are viable under Alabama state law. *Cf. Adventure Outdoors*, 552 F.3d at 1301 (concluding that the federal-law issue raised in defamation claims was not "substantial" because the plaintiffs could continue to litigate the claims if a court decided the issue in the defendants' favor). For these reasons, the court finds that the federal government has a limited interest in this private tort action, and, thus, this action presents no substantial question of federal law under *Grable*. *See id.* (holding that the federal government held "a limited interest in [a] private tort action over private duties tangentially related to the federal gun laws").

Nor is the court convinced that its exercise of jurisdiction in this action would comport with the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Defendants have not pointed to any federal-law cause of action created by Congress that Plaintiffs could have raised under these circumstances. No federal statute or

legislative history expresses Congress's intent to remove from a state court to this court claims of abandonment, breach of contract, tortious interference, or negligence where the defendant is a hospital, an entity governing a hospital, or a professional performing services in a hospital. *See Adventure Outdoors*, 552 F.3d at 1303 (noting that the defendants there failed to identify "any provision of the federal criminal law that expresses a congressional intent to remove state defamation cases from state court jurisdiction"). As in *Adventure Outdoors*, the court's exercise of federal-question jurisdiction here could allow for federal-question jurisdiction in a host of cases involving hospital defendants. *See id.* at 1302 (expressing concern that finding federal-question jurisdiction in that defamation case would open the doors for federal-question jurisdiction in a broader swath of defamation cases). Because Plaintiffs' claims do not necessarily raise a federal issue, this action presents no "substantial" federal issue as defined in *Gunn*, and the court's exercise of federal-question jurisdiction here would not comport with the congressionally approved balance of federal and state judicial powers, Defendants have failed to establish this court's subject-matter jurisdiction over the claims in this action.

Defendants rely on *Stratienko* to justify removing this action from state court. The court is not persuaded for two reasons. First, *Stratienko* is distinguishable from this case because the plaintiff in that case filed his state-court action while a related federal-court action was pending, so the court there had good reason to find that the plaintiff artfully pled his complaint to avoid federal-question jurisdiction. *See* 2008 WL 11342543, at *1. Second, *Stratienko* does not convince the court that federal-question jurisdiction exists here because it fails to discuss the Supreme Court's recent decisions on substantial-federal-question jurisdiction in *Grable*, *Empire Healthchoice*, and *Gunn*. *See generally Stratienko*, 2008 WL 11342543. In accordance with the Supreme Court's and Eleventh Circuit's binding opinions on substantial-federal-question

jurisdiction, the court concludes that the federal-law issues implicated here are not necessarily raised nor substantial enough to justify this court's jurisdiction.[3]

## IV. Conclusion

For the foregoing reasons, the court finds that Defendants have not satisfied their burden of proving the court's subject-matter jurisdiction. Therefore, this case is due to be remanded to the Circuit Court of Jefferson County, Alabama. A separate Order will be entered.

**DONE** and **ORDERED** this July 31, 2018.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[3] The court emphasizes that it has reviewed whether it can exercise subject-matter jurisdiction based upon Plaintiffs' current pleadings and their pending motion for declaratory and/or injunctive relief. To date, Plaintiffs have only raised state-law claims, have sought both monetary and equitable relief, and have claimed that they are willing to accept equitable remedies other than Dr. Castellanos' reinstatement at UAB Hospital. To be clear, Plaintiffs' oral argument caused the court to question whether they actually would accept monetary relief for the alleged state-law violations if their preferred equitable relief is barred. Nevertheless, the court must accept Plaintiffs' pleadings and other paper as they now exist. If Plaintiffs later insist on specific forms of equitable relief not specified in their current pleadings and motions, their filings might very well justify re-removal of this action under 28 U.S.C. § 1446(b)(3) at that time.